UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SANDY TOMNETTIE BOYKIN | CIVIL ACTION NO. 5: 14-cv-3095 |
| VS. | |
| SCHOOL BOARD OF CADDO PARISH | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the undersigned Magistrate Judge is Defendant Caddo Parish School Board's unopposed Motion for Summary Judgment. [doc. # 23]  For reasons stated below, the Motion is **GRANTED**.

## Background

*Pro se* Plaintiff Sandy Tomnettie Boykin, on behalf of her minor child S.H., filed this civil rights Complaint pursuant to 42 U.S.C. § 1983 against Caddo Parish School Board ("the School Board") on October 23, 2014, claiming that one or more school employees improperly looked between her daughter S.H.'s legs and falsely accused someone in her house of molesting S.H.  Boykin further contended that the principal of her daughter's school and the school board failed to take any corrective action against the employee who reported the incident to Child Protective Services on October 30, 2013.

Defendant filed the instant Motion on October 26, 2015. [doc. # 23]. Defendant argues that it is entitled to summary judgment because there is no genuine issue of material fact, and the claims Plaintiff asserts are not actionable under 42 U.S.C. § 1983, any other federal law, or state law. Defendant contends that, as a matter of law, the School Board is not liable under a *respondeat superior* theory of liability nor under a municipal liability theory. Additionally,

Defendant asserts that Plaintiff cannot sustain a claim under Title IX nor under any state law.

## Law and Analysis

**A. Summary Judgment Standard**

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[1]

---

[1] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

2

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

While the facts are to be reviewed with all inferences drawn in favor of the non-moving party, factual controversies are resolved in favor of the non-movant only when there is an actual controversy.  That is, when both parties have submitted evidence of contradictory facts. *McCallum Highlands, Limited v. Washington Capital DUS, Inc.*, 66 F.3d 89 (5th Cir. 1995).  In this case, the plaintiff has failed to submit evidence of any facts contradictory to those submitted by the moving party.  In the absence of an opposition to the motion, this Court must accept the evidence presented by the defendant and its statement of undisputed facts as true.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Thus, for purposes of this motion, those facts are deemed admitted.

**B.     Section 1983**

To state a claim under section 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Texas Dep't of Criminal Justice*, 512 F.3d 157, 165 (5th Cir. 2007). Municipalities and other local governmental units, including school boards, may only be sued under § 1983 if the plaintiff's alleged deprivation of rights stems from the municipality's unconstitutional or illegal policies. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

1. No *Respondeat Superior* Liability

It is well established that a §1983 plaintiff cannot obtain monetary damages or injunctive relief from a supervisor solely on a theory of *respondeat superior*. *Beattie v. Madison Cnty. Sch.*

*Dist.*, 254 F.3d 595, 600 n. 2 (5th Cir. 1983) (*citing Monell*, 436 U.S. at 690). "Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (noting that a municipality cannot be held liable under §1983 on a *respondeat superior* theory). "[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur Cnty*, 245 F.3d 447, 459 (5th Cir. 2001) (*quoting Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "[Section] 1983 does not give a cause of action based on the conduct of subordinates. Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Plaintiff admitted that she seeks to hold the School Board responsible solely because of its supervisory role over the alleged actions of some individual employees of the school. [doc. # 27, p. 6]. However, as a matter of law, the School Board is not liable under a *respondeat superior* theory of liability, and any claim on this basis must fail.

  2. Municipality Liability

  A supervisor who is not personally involved is liable under the theory of "supervisory liability" only if it has implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304. Consequently, "[t]o establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citation and internal quotation marks omitted). To this end, "[a] plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge,

and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541–42 (citation and internal quotation marks omitted). The plaintiff must also "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997). Municipalities and other local governmental units, including school boards, "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690-91.

Defendant can only be found liable for implementing a policy or custom. However, it is undisputed that the policies that the School Board implemented actually prohibited the misconduct Plaintiff alleges. In cases involving the reporting of child abuse or neglect, the School Board's policy explicitly prohibits the filing of false reports and warns that violators may be subject to criminal prosecution. [doc. # 27, p. 56]. The School Board's "Sexual Harassment/Inappropriate Boundary Invasion Policy" prohibits any employee from inappropriate boundary invasions. *Id.* at 60.

Plaintiff has not alleged that School Board had in place either an explicit or implicit policy, practice, or custom of allowing its employees to file false reports to Child Protective Services or to allow teachers or other school employees to engage in inappropriate conduct. A single instance of an employee of the School Board violating a policy is insufficient to establish that the School Board had an implicit policy, practice, or custom of allowing teachers to violate its policies. Holding the School Board liable on the basis of an employee's violation or

6

non-enforcement of this policy would amount to prohibited vicarious liability based on the acts of a School Board employee. *See Monell*, 436 U.S. at 690.

Even more important, the undisputed facts show that the moving force here was a Louisiana state law which mandates that a person with a duty to report, such as a teacher,[2] "who has cause to believe that a child's physical or mental health or welfare is endangered as a result of abuse or neglect, or that abuse or neglect was a contributing factor in a child's death, **shall** report." LA. CH. C. art. 609(a). (emphasis added). Plaintiff claimed that a teacher looked between her daughter's legs and falsely accused someone in her household of molesting S.H. [docs. # 1, p. 2; # 27, p. 6]. Plaintiff further complains that she complained to the School Board, but no corrective action was taken. *Id.*

These vague and conclusory allegations, without more, fail to provide context to support a plausible claim for relief on the theory of deliberate indifference by School Board to the teacher's actions. In fact, the undisputed facts of this case show that the teacher in question acted at all times with propriety, that she and the other school employees properly reported a suspicion of child abuse based on the child's own complaints and the physical evidence which they observed. Plaintiff pleads no facts showing that the School Board's response was inappropriate, much less that it knew its response to the alleged incident created an obvious and substantial risk of recurring abuse. Plaintiff made general and conclusory allegations in her complaint that the School Board failed to take necessary action and that this failure resulted in the teacher "molest[ing] kids every day." [doc. # 1]. However, the undisputed facts, as set out in defendant's motion, are that the Plaintiff admits that she has no personal knowledge about what the teacher

---

[2] LA. CH. C. art. 603(17)(d) defines a teacher as a mandatory reporter.

aides or the teacher saw, and that she has no facts, other than her own unsupported beliefs, to support her claim that the school employees knowingly submitted a false report or that any other misconduct occurred. There is simply no evidence to support a claim of a constitutional violation by the school employees, much less a claim of deliberate indifference by the School Board. Plaintiff fails to support a viable claim under 42 U.S.C. § 1983, and summary judgment is appropriate.

**C.    Title IX**

Defendant notes that, although Plaintiff's *pro se* complaint makes no reference to Title IX, summary judgment would still be warranted even if Plaintiff were to plead such a claim. [doc. 23, p. 10]. Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX applies to "institutions and programs that receive federal funds." *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 247 (2009). Neither party has alleged that the Caddo Parish School Board is an institution that receives Federal financial assistance; however, assuming it does for purposes of this motion, the Plaintiff's potential Title IX claim would still not survive summary judgment review.

In *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280 (1998), the Supreme Court set forth the standard under which a school district may be held liable for damages under Title IX for a teacher's sexual harassment of a student. The Court held that

> in cases like this one that do not involve official policy of the recipient entity, . . . a damages remedy [against the school district] will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and

> to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.

*Id.* at 290. The Fifth Circuit has held that "[t]he deliberate indifference standard is a high one." *Doe ex rel. Doe v. Dallas Independent School Dist.*, 220 F.3d 380, 384 (5th Cir. 2000). "Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, 'even if the harm ultimately was not averted.'" *Id.* To defeat Defendant's motion for summary judgment, Plaintiff must adduce evidence sufficient to create a genuine issue of material fact that some school official (1) had authority to address the alleged abuse and to institute corrective measures on School Board's behalf, (2) had actual notice, and (3) acted with deliberate indifference. *Id.*

The following facts are undisputed: On the day in question, the minor child, S.H., a pre-K special education student, complained that she was hurting in her genital area. At some point during the day, S.H. had to use the bathroom, and in accordance with the school's standard practice for the early childhood special education pre-K students, the teacher's aide, Annie Lewis, accompanied her. When Ms. Lewis opened the door to see if S.H. was finished or needed any help, Ms. Lewis noticed for the first time a suspicious dark reddish brown stain on much of S.H.'s underpants which were down around the child's ankles. Ms. Lewis also asked a second teacher's aide and an instructional coordinator who was in the classroom that day observing to look at the suspicious markings on S.H.'s underclothing. They confirmed that the stain was suspicious, was not consistent with feces or some other benign cause, and properly reported what they had seen, along with the fact of the child's complaints of pain, to the school principal. The school properly reported its concerns to Child Protective Services, which sent an investigator that

same day. While the investigation ultimately did not find sufficient evidence to support further action, there is simply no evidence that the school board, or anyone connected with the school or school system, acted in anything other than a completely appropriate manner.

As a matter of law, School Board did not act with deliberate indifference. *See also Howell v. Austin Indep. School Dist.*, 323 Fed. Appx. 294 (5th Cir. 2009). School Board's motion for summary judgment regarding any possible Title IX claim against it is therefore GRANTED.

**D.      Supplemental State Law Claims**

Defendant also contends that, "to the extent Plaintiff's Complaint could be construed as pleading any supplemental state law claim, the [School Board] is immune from civil liability." [doc. # 23, p. 15]. Article 609 requires any "mandatory reporter"[3] who has cause to believe that a child's physical or mental health or welfare is endangered as a result of abuse or neglect" to report that belief in accordance with article 610. Article 611 of the Louisiana Children's Code then provides in relevant part:

> Any person who in good faith makes a report, cooperates in any investigation arising as a result of such report, or participates in judicial proceedings authorized under the provisions of this Chapter, . . . shall have immunity from civil or criminal liability that otherwise might be incurred or imposed.

LA. CH. C. art. 611(A).

The School Board is included under the definition of "person" in article 611. LA. CH. C. art. 603(23). "[T]he immunity afforded the mandatory reporters is meant to encourage those with reasonable cause for suspicion to report suspected cases, free of the chilling effect presented by

---

[3] LA. CH. C. art. 603(17)(d) defines a teacher as a mandatory reporter.

the threat of lawsuits." *S.G. v. City of Monroe*, 843 So.2d 657, 662 (La. App. 2 Cir. 4/11/03). The immunity is not available to anyone who makes a report "known to be false or with reckless disregard for the truth of the report." LA. CH. C. art. 611(B)(2).

Because the undisputed evidence shows that, far from having been made with knowledge that the information was false or with reckless disregard whether it was false, the report was actually made based on reasonable suspicion which required reporting and warranted further investigation. Therefore, this Court must find that the report was made in good faith. As stated in *Gross v. Haight*, 496 So. 2d 1225, 1228 (La. App. 5th Cir. 1986), an error in judgment does not constitute bad faith. The school employees properly reported their observations and the child in question's complaints; therefore, they are entitled to the immunity provided in article 611. Thus, to the extent Plaintiff makes any claims stemming from the school's report to Child Protective Services, the School Board is entitled to judgment as a matter of law.

## Conclusion

For the above-stated reasons,

Defendants' Motion for Summary Judgment, [doc. # 23], is **GRANTED**, and Plaintiff's Complaint, [doc. # 1], **DISMISSED with prejudice**. A judgment of dismissal will be filed separately.

In Chambers, Monroe, Louisiana, this 7th day of December, 2015.

*[signature]*
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE